RECEIVED
IN LAKE CHARLES, LA.

JUN 14 2012

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JULIUS LAMBERT | : | DOCKET NO. 2:09 CV 0792 |
| VS. | : | JUDGE MINALDI |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

The plaintiff, Julius Lambert ("Lambert"), seeks a judicial review of the Commissioner's October 23, 2008, final administrative decision denying benefits.

## PROCEDURAL HISTORY

On January 10, 2007, the Plaintiff filed an application for supplemental security income, alleging disability beginning March 31, 2002. The claim was denied and the Plaintiff filed a timely written request for a hearing on May 25, 2007. Lambert testified at a hearing on September 24, 2008, in Lake Charles, Louisiana before ALJ Paul Schwarz.

On October 23, 2008, the ALJ issued an Unfavorable Decision finding the Plaintiff not disabled at step five of the sequential evaluation process. Dissatisfied with this decision, the Plaintiff filed a Request for Review with the Appeals Council on December 16, 2008. On March 6, 2009, the Appeals Council denied the Plaintiff's request. On May 14, 2009, the Plaintiff filed this suit appealing the determinations of the Commissioner.

## FACTS

Lambert was 23 years old at the time of the hearing (Tr. 37). He graduated from Parkview Christian School and was determined by the ALJ not to have any past relevant work (Tr. 11, 57). The ALJ found that Lambert has the following severe impairments: "Seizure disorder, mood disorder, personality disorder, borderline intellectual functioning, and a history of substance abuse" (Tr. 49).

In his decision, the ALJ determined that the Plaintiff had the Residual Functional Capacity (RFC) on a sustained basis for a significant period of time to perform a full range of work at all exertional levels but with nonexterional limitations. Specifically, Lambert should not work around unprotected heights or potentially dangerous, unguarded moving machinery. Mentally, the ALJ found Lambert's RFC to be characterized by mild (slightly limited) limitations in his ability to follow work rules; deal with the public; use judgment; function independently; demonstrate reliability; and understand, remember and carry out simple job instructions (Tr. 52). The ALJ further found that Lambert's RFC is compromised by marked ( seriously limited but not precluded) limitations in his ability to understand, remember and carry out complex job instructions. The ALJ found that Lambert retained the ability to perform one and two step operations; understand, remember and carry out simple instructions; respond appropriately to supervision and coworkers; perform routine repetitive tasks; and function in a low-stress work setting where public contact is minimal. *Id.*

## MEDICAL EVIDENCE

On May 25, 1999, Lambert was referred to Calcasieu Parish Schools Pupil Appraisal Services for an evaluation due to poor school performance (Tr. 281). The Plaintiff had a diagnosis of ADHD and was taking Adderall, but still had significant difficulty completing assignments (Tr. 282, 283). The Plaintiff's childhood physician (unnamed in the evaluation) stated that the Plaintiff's

school work, alertness, ability to perform manual tasks, learning, speaking, and working may be impaired by his condition (Tr. 283). The teachers noted that he was easily distracted, had poor attention span, had difficulty following through on instruction from others, could not remember and needed instructions repeated (Tr. 285).

Dr. Lawrence S. Dilks, Ph.D., examined the Plaintiff (Tr. 159, 223) in 2003 and again in 2008. At his initial evaluation in 2003, Dr. Dilks noted that the Plaintiff had "a severe handicap in the realm of work tolerance," which suggested that the Plaintiff "lacks the capacity to meet the physical and psychological demands of work" (Tr. 164). The Plaintiff's GAF[1] was 55 (Tr. 163). A second psychological evaluation on February 13, 2008, by Dr. Dilks showed the Plaintiff to have distracted thinking, impaired abstracting ability, and visual-perceptual deficits (Tr. 223). Tests showed that the Plaintiff had a weakness in general social function (Tr. 226). Dr. Dilks further noted that the Plaintiff had "severe deficiencies in the realm of communication," "a severe handicap in the realm of work tolerance," and a "severe impairment in the realm of work skill" (Tr. 229). Dr. Dilks explained that the Plaintiff "lacks the capacity to learn and perform job tasks" and could not adapt in a way "needed to maintain gainful employment". *Id.* He gave the Plaintiff a GAF score of 40 (Tr.

---

[1] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.' " *Boyd v. Apfel,* 239 F.3d 698, 700 n. 2 (5th Cir.2001) (quoting American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed. 1994) (DSM–IV)). *Herrera v. Commissioner of Social Sec.* 406 Fed.App'x. 899, 904, 2010 WL 5421297, 4 ( 5th Cir. 2010).

228).

Bruce Wiley, M.D., observed that the Plaintiff's speech, behavior, and appearance were normal (Tr.172) in 2006. His affect was stable, and his thought process was logical with a normal pace (Tr. 54, 173). Dr. Wiley noted that the Plaintiff's memory was good and his cognitive function was average (Tr. 54, 173). Dr. Wiley opined that the Plaintiff's GAF score was 68 (Tr. 54, 169, 173-174).[2]

A March 20, 2007, mental status examination performed by Jerry L. Whiteman, Ph.D. (Tr. 51, 54-55, 200-203) reported that the Plaintiff's "communication skills were simple, but adequate" (Tr. 54, 201). The Plaintiff's short term memory and concentration skills were normal (Tr. 202). Dr. Whiteman's primary diagnoses were substance abuse and an adjustment disorder with mixed features of emotions and conduct (Tr. 55, 202). Dr. Whiteman opined that Plaintiff's ability to carry out verbal instructions "appears to be variable to poor" (Tr. 203).

The March 26, 2007, opinion of Tom Ray, Ph.D., the non-examining state agency psychologist (Tr.55, 204-217) considered Dr. Whiteman's report (Tr. 42, 59-62, 216). Dr. Ray opined that the Plaintiff did not have a severe mental impairment (Tr. 55, 204).

Lambert also sought treatment at Jennings Behavioral Health Outpatient Mental Services (Jennings Behavioral Health) in October 2007 (Tr. 55, 244-268). The records from Jennings indicated that the Plaintiff's level of depression improved with Trazodone, so much that he was not experiencing any symptoms as of January 18, 2008 (Tr. 55, 243, 269-276, 300).

---

[2] A GAF of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but the Plaintiff was "generally functioning pretty well." *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text. rev. 2000)(*DSM-IV-TR).*

Charles Bramlet, M.D., the Plaintiff's psychiatrist at Jennings Behavioral Health, reported in January 2008 that the Plaintiff was "very capable of handling this employment opportunity as a barber" (Tr. 12, 55, 241-244, 253, 271, 275) (emphasis added). On March 17, 2008, the Plaintiff reported that he was "doing well" (Tr. 55, 240).

Nancy Marshall Tarrand, M.D., the psychiatrist who reviewed the medical evidence and testified at the September 24, 2008, hearing, indicated that the medical evidence showed a history of substance abuse (PCP, Xanax, and alcohol), with the Plaintiff first using marijuana at the age of 14 (Tr. 28, 31, 50, 54, 125-142, 169-199, 201, 225, 244-245, 249). Dr. Tarrand opined that the Plaintiff's primary issues were a mood disorder, a personality disorder with some complications from substance abuse, and some underlying mild to moderate depressive symptoms (Tr. 50, 30-31). Dr. Tarrand opined that the Plaintiff retained the ability to respond appropriately to supervision and coworkers; understand, remember, and carry out simple instructions; perform routine repetitive tasks and one- and two-step operations; and function in a low-stress work setting where public contact is minimal (Tr. 33, 52).

## LAMBERT'S TESTIMONY

Lambert testified that he has lived with his grandmother for approximately the last thirteen years and that he depends on her help to make life decisions (Tr. 17, 18). He testified that he has problems concentrating and that while attending school, he received special education because he "couldn't do the same as other students" (Tr. 12, 17). The Plaintiff also testified that he has trouble maintaining friends and being around crowds (Tr. 17). He testified that during an attempt to work at Taco Bell, management would often call his grandmother and complain about him (Tr. 13). Ms. Rainey, the grandmother of Julius Lambert (Tr. 20), testified that without her constant support, she

believes that the Plaintiff cannot live independently and care for himself (Tr. 25). She testified that the Plaintiff does not remember verbal instructions or reminders even after just 5 or 10 minutes. He just "don't remember what we're fixing to do" (Tr. 25).

## STANDARD OF REVIEW

This court reviews the Commissioner's denial of social security benefits only to ascertain (1) whether the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.[3] Substantial evidence is that which a reasonable mind might accept to support a conclusion.[4] "It is more than a mere scintilla and less than a preponderance."[5] When we apply the substantial evidence standard, "we scrutinize the record to determine whether such evidence is present. We may not reweigh the evidence, try the issues *de novo,* or substitute our judgment" for that of the Commissioner.[6]

In order to be eligible for disability benefits, the claimant must prove that she has a medically determinable physical or mental impairment, or combination of impairments, lasting at least twelve months that prevents her from engaging in a substantial gainful activity.[7] Substantial gainful activity is defined as work involving significant physical or mental abilities that is usually done for pay or profit.[8]

---

[3] *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000).

[4] *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

[5] *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir.1995) (internal quotation marks omitted).

[6] *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994) (citation omitted), *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *see Newton,* 209 F.3d at 452.

[7] 42 U.S.C. § 423(d)(1)(A).

[8] 20 C.F.R. § 404.1572(a) and (b).

The ALJ engages in a five-step sequential evaluation process for determining whether an individual is disabled: (1) whether the claimant is presently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment, as defined by regulations; (3) whether the claimant's impairment or combination of impairments meets the criteria of an impairment listed in Appendix 1 of the regulations; (4) whether the impairment prevents the claimant from doing her past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.[9]

Before considering the fourth and fifth steps, the Commissioner must determine the claimant's residual functional capacity (RFC).[10] The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments. In determining the RFC, the Commissioner must consider all of a claimant's impairments, including those that are not severe.[11]

The claimant bears the burden of proof on the first four steps and then the burden shifts to the Commissioner for the fifth step. If the claimant shows she is no longer capable of performing her previous jobs, the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy.[12]

## ARGUMENT AND LAW

Lambert raises four points of error:

---

[9] *Id.* § 404.1520(a).

[10] *Id.* §404.1520(e).

[11] *Id.* § 404.1545.

[12] *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.1987)

1) The ALJ failed to comply with 20 C.F.R. § 404.1527, 416.927, and SSR 96-2p by failing to accord controlling weight to the opinion of Dr. Dilks, the Plaintiff's treating physician;

2) The ALJ failed to comply with SSR 96-8p, SSR 96-6p, 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2) in failing to specifically provide or even discuss, the reasons for rejecting the contrary opinion the non-examining State agency consultant;

3) The VE testimony is unreliable because a fast food worker has job duties that exceed the limitations contained in the ALJ's hypothetical questions and RFC; and

4) The ALJ failed to comply with SSR 83-14 and/or SSR 85-15 by failing to cite examples of specific occupations that the claimant can perform and the incidence of such work in the national economy.

## CONTROLLING WEIGHT TO TESTIMONY

Generally, a court will give substantial weight to the testimony of a treating physician unless (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.[13]

"Ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985). Unless the ALJ gives a treating source's opinion controlling weight, he must consider the factors set forth in 20 C.F.R. § 404.1527(d) to decide the weight to be given to any medical opinion. However, "[t]he ALJ has the sole responsibility of determining the disability status." *Moore v. Sullivan,* 919 F.2d 901, 905 (5th Cir.1990). The six factors in subsection (d) of 20 C.F.R. § 404.1527 apply only with respect to the *medical opinions* of treating physicians. *Villalpando v. Astrue,* 320 Fed.App'x. 208, 210-211,

---

[13] *Harris v. Astrue,* 546 F. Supp. 2d 1267 (N.D. 2008) quoting *Phillips v. Barnhart,* 357 F.3d 1232, 94 Soc. Sec. Rep. Serv. 123.

2009 WL 728408, 2 ( 5th Cir. 2009).

Subsection (e) of the regulation expressly explains that some opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ's determination. 20 C.F.R. § 404.1527(e) & (e)(3). Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work."20 C.F.R. § 404.1527(e)(1). These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner." The factors set out at subsection (d) apply only to medical opinions, not opinions "reserved to the Commissioner."

Lambert argues that, while evaluating the credibility of Lambert's testimony, the ALJ only recited a portion of the findings made by Dr. Dilks, the Plaintiff's treating physician (Tr. 54). Lambert asserts that when evaluating the medical opinion evidence, Dr. Dilks' name was not mentioned (Tr. 55-56) even though Dr. Dilks opined that the Plaintiff had "a severe handicap in the realm of work tolerance," and a "severe impairment in the realm of work skill" (Tr. 229).

The ALJ found "no evidence that any treating or examining physician was of the opinion that [the Plaintiff] was precluded from all work activity" (Tr. 56). However, Lambert argues that Dr. Dilks, as the Plaintiff's treating physician, opined that the Plaintiff "lacks the capacity to learn and perform job tasks…needed to maintain gainful employment" and cannot "meet the physical and psychological demands of work" (Tr. 164, 229). Lambert posits that the ALJ's silence on the issue directly violated 20 C.F.R. § 404.1527, 416.927, and SSR 96-2p.

The Commissioner argues that Dr. Dilks was not a "treating physician" as he examined Lambert only twice over a five year time period, first on January 27, 2003, and then not again until February 13, 2008 (Tr. 52, 54, 159-168, 223-232).

9

In describing the proper evaluation of opinion evidence on disability claims, the Social Security Administration ("SSA") states the following:

> Generally, more weight is given to opinions from treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of a person's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. 20 C.F.R. § 404.1527(d)(2). A "treating source" (i.e., a treating physician) is a claimant's "own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502.

The ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986); *see Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir.2004) (per curiam) (ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause" is shown to the contrary); *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir.1985) (per curiam) (same); *see also Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir.1982) (ALJ's failure to mention appellant's treating physician and the weight, if any, given to the treating physician's opinion constituted grounds for reversal).

A treating physician is one who has provided treatment to the claimant on more than one occasion.[14] A physician also qualifies as a treating source if the claimant sees him with a frequency consistent with accepted medical practice for the type of treatment *and/or evaluation* required for a medical condition (emphasis added). *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir.2007) (alteration in original) (quoting 20 C.F.R. § 404.1502); *Cruse v. Commissioner of Social*

---

[14] Social Security Disability Law and Procedure Sec. 2:26.

*Sec.*, 502 F.3d 532, 540 ( 6th Cir. 2007). The Commissioner "may consider an acceptable medical source who has treated or evaluated [claimant] only a few times or only after long intervals ( *e.g.*, twice a year) to be [claimant's] treating source if the nature and frequency of the treatment or evaluation is typical for [claimant's] condition(s)." 20 C.F.R. §§ 404.1502, 416.902. In determining whether a physician qualifies as a treating source, the duration of the relationship is not as important as the nature of that relationship. *Schisler v. Bowen,* 851 F.2d 43, 45 ( 2nd Cir.1988).

Dr. Dilks performed a psychological evaluation twice, in 2003 and 2008. The frequency of this type of psychological evaluation is not atypical and Lambert does not have a history of continuity with any of the medical providers. Therefore, Dr. Dilks, who performed psychological testing and evaluation, was a treating source. Because Dr. Dilks was a treating source, the ALJ should have adopted his opinion unless it was not well supported or it was inconsistent with other evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188 at *3 (Social Security Administration, July 2, 1996). *Haley v. Massanari,* 258 F.3d 742, 749 (8th Cir.2001) (reversible error for ALJ not to order consultative examination where such evaluation is necessary to make an informed decision); *Pratt v. Sullivan,* 956 F.2d 830, 834 (8th Cir.1992) (per curiam) (reversible error for ALJ to substitute his own conclusions for diagnosis of an examining psychiatrist).

The Commissioner argues that even if this Court determines that Dr. Dilks qualified as a "treating" psychologist, the ALJ has "sole responsibility for determining the claimant's disability status." *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994), citing *Moore v. Sullivan,* 919 F.2d 901, 905 (5th Cir. 1990); 20 C.F.R. § 416.927(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled").

11

"Treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p. "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'" See *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) citing 20 C.F.R. § 404.1527(e)(1). "These determinations are legal conclusions that the regulations describe as 'reserved to the Commissioner.'" *Id.* Dr. Dilk's opinion, however, was not restricted to a determination of disability.

On his initial evaluation (2003), Dr. Dilks noted that the Plaintiff had "a severe handicap in the realm of work tolerance," which suggested that the Plaintiff "lacks the capacity to meet the physical and psychological demands of work" (Tr. 164). The Plaintiff's GAF at that time was 55 (Tr. 163). On February 13, 2008, Dr. Dilks' psychological evaluation showed Lambert to have distracted thinking, impaired abstracting ability, and visual-perceptual deficits (Tr. 223). Tests showed that he had a weakness in general social function (Tr. 226). Dr. Dilks further noted that Lambert had "severe deficiencies in the realm of communication," "a severe handicap in the realm of work tolerance," and a "severe impairment in the realm of work skill" (Tr. 229). Dr. Dilks explained that the Plaintiff "lacks the capacity to learn and perform job tasks" and could not adapt in a way "needed to maintain gainful employment". *Id.* In 2008, Dr. Dilks gave Lambert a GAF score of 40 (Tr. 228).

Dr. Dilks' assessment was not inconsistent with the evaluations in the record. It is clear that Lambert has difficulty functioning. He attempted to work at Taco Bell, but he was not successful. He had difficulty following instructions and could not successfully interact with coworkers and supervisors. The ALJ determined that the Plaintiff had the Residual Functional Capacity (RFC) with the following nonexertional limitations: mild limitations in his ability to follow work rules; deal

with the public; use judgment; function independently; demonstrate reliability; and understand, remember and carry out simple job instructions. Yet, the ALJ found Lambert capable of working at step five of his analysis. The ALJ afforded no special significance or weight to Dr. Dilks' January 2003 and February 2008 opinions that Plaintiff could not work (Tr. 164, 168, 228-229) and he should have. This is grounds for a new hearing. 20 C.F.R. § 404.1527, 416.927, and SSR 96-2p.

Accordingly, this case will be remanded to the Commissioner for re-evaluation of the record, giving credence to Dr. Dilks' opinion as a treating source.

Lake Charles, Louisiana, this 14 day of June, 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE